**IN RE KENNEDY**

[103 N.C. App. 632 (1991)]

---

IN THE MATTER OF ROGER NEAL KENNEDY

No. 9018DC829

(Filed 6 August 1991)

### Infants § 20 (NCI3d) — juvenile — neglected — ordered into custody of DSS

The trial court did not err by ordering a juvenile into the custody of the Department of Social Services where there was substantial evidence to support the trial court's findings of fact and the findings amply support the conclusions that the juvenile was neglected and that DSS should have legal and physical custody. Although DSS had difficulty placing the child, that difficulty is not a basis for returning a neglected child to parents who will not provide proper care and supervision.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 29, 30.**

APPEAL by respondents from order entered 18 April 1990 and 16 May 1990 by *Judge Sherry F. Alloway* in GUILFORD County District Court. Heard in the Court of Appeals 7 May 1991.

On or about 23 February 1990 the Guilford County Department of Social Services (DSS) filed a juvenile petition alleging that Roger

Neal Kennedy was a neglected juvenile. Respondent Ruth Kennedy is the natural mother of the juvenile and respondent Bobby Ray Kennedy is the stepfather of the juvenile.

After a hearing the trial court made the following findings in an order entered 18 April 1990. First, the trial court found that "said juvenile is a neglected juvenile as defined by law in that his parents have inflicted upon him inappropriate discipline, specifically, the juvenile was forced on numerous occasions to be in a squatting position with his knees bent and arms extended; that on occasion, the juvenile was forced to hold a board placed behind his bent knees with his arms extended; that this type of unusual punishment could last anywhere from five (5) minutes up to an hour; further, the juvenile received numerous whippings from switches or boards which resulted in marks on his buttocks and legs; and that the juvenile was also forced to spend weekends in bed and allowed to get out of bed only to go to the bathroom or to eat on occasion." The trial court further found that "the juvenile is mildly-mentally retarded and emotionally disturbed and was placed in the Department of Social Services' custody in Georgia and out of the parents' home for approximately the past five (5) years; that the juvenile did not return to his parents' home in High Point until approximately January 1989, at which time the parents had removed the juvenile from his previous out-of-home placement in a hospital setting against medical advice; that the juvenile was taking medication at the time that his parents removed him from the Florida treatment facility; that the parents, on their own, terminated this medication without seeking any medical advice; further, since January 1989, the parents have failed to seek or obtain consistent mental health treatment for the juvenile although by their own admission, the juvenile's behavior deteriorated after his initial return to High Point."

The trial court also found that non-corporal punishment had been successful in correcting the juvenile's misbehavior in school and "the inappropriate punishment administered by his parents did not assist in correcting the juvenile's behavior." The trial court found that the juvenile did not want to return home. Finally, the court found that "with regard to the allegations of lack of proper eye care, personal hygiene and the other allegations in the petition, that there may have been some misunderstanding or miscommunication between the school personnel and the parents and that the evidence and allegations do not rise to the level of neglect."

IN RE KENNEDY

[103 N.C. App. 632 (1991)]

As a result the trial court concluded as a matter of law that the court had subject matter jurisdiction over the parties; that the juvenile is neglected; that DSS' immediate removal of the child from the home was warranted; that it is in the best interest of the child for custody to remain with DSS. The trial court then decreed that the juvenile was neglected because of inappropriate discipline and ordered that legal and physical custody remain with DSS; that the parents enter into a contract with DSS setting forth the terms and conditions of reunification; and "that upon the juvenile's discharge from Baptist Hospital, if the the [sic] Department of Social Services is unable to obtain other suitable placement for the juvenile, Kendall Center is ordered to accept the juvenile into their placement on a temporary basis until other long-term appropriate placement can be obtained." The trial court then continued the matter until 16 May 1990 for further disposition.

After the hearing on 16 May 1990, the trial court found in its order entered 16 May 1990 that DSS was unable to find appropriate placement for the juvenile; that the child did well at Baptist Hospital but had problems adjusting to Kendall Center; that the child's return to high school was unsuccessful; that the juvenile was in need of therapy and a suitable placement; and that despite the parents' request that the child be allowed to return home, it was in the best interest of the child to remain in DSS custody while DSS worked towards placement. The trial court ordered the juvenile's entire family to submit to the Family Environmental Scale/Parenting Stress Index and the MMPI-2 test and that the parents be assigned other appointed counsel for their appeal. The trial court then ordered that legal and physical custody of the juvenile remain with DSS, that the parents be allowed supervised visitation at least once every other week, that Attorney Mary Katherine Nicholson be appointed to handle this appeal, that the matter be reviewed again on 27 June 1990 and that the matter be retained for further orders of the court. Respondents appeal.

*Deputy County Attorney Lynne G. Schiftan and Attorney Advocate Avis Goodson for petitioner-appellee.*

*Mary K. Nicholson for respondent-appellants.*

EAGLES, Judge.

Respondents assign as error the trial court's "ordering the juvenile into the custody of the Department of Social Services

in light of the testimony by the Department of Social Services that it was unable, at this time, to provide adequate living and educational facilities for the juvenile." We disagree.

Initially, we note that G.S. 7A-517(21) defines a neglected juvenile as "[a] juvenile who does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State law, or who lives in an environment injurious to his welfare, or who has been placed for care or adoption in violation of law."

Under N.C.G.S. § 7A-647(2)c., once a minor is adjudicated neglected, a judge has the authority to place the child in the custody of DSS. "[T]he natural and legal right of parents to the custody, companionship, control and bringing up of their children is not absolute. It may be interfered with or denied for substantial and sufficient reason, and it is subject to judicial control when the interest and welfare of the children require it." Judicial intervention is authorized because the welfare and best interest of the child is always treated as the paramount consideration.

*In the Matter of Devone*, 86 N.C. App. 57, 61, 356 S.E.2d 389, 391 (1987) (citations omitted).

The court must also be guided by the express purpose of dispositions as stated in G.S. 7A-646, as follows:

Sec. 7A-646. Purpose.

The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile to achieve the objectives of the State in exercising jurisdiction. If possible, the initial approach should involve working with the juvenile and his family in their own home so that the appropriate community resources may be involved in care, supervision and treatment according to the needs of the juvenile. Thus, the judge should arrange for appropriate community-level services to be provided to the juvenile and his family in order to strengthen the home situation.

*In the Matter of Brenner*, 83 N.C. App. 242, 246-47, 350 S.E.2d 140, 144 (1986).

Here, there is substantial competent evidence in the record to support the trial court's findings of fact. The findings of fact amply support the conclusions of law that Roger was a neglected juvenile and that DSS should have legal and physical custody of Roger. *See In the Matter of Devone*, 86 N.C. App. 57, 356 S.E.2d 389 (1987). While the evidence presented conflicts as to the duration of the inappropriate disciplinary measures used against Roger, both parents did in fact admit to the types of disciplinary measures used. Also, respondents discontinued medical treatment for the juvenile without seeking medical advice. Although the parents believed they were justified in disciplining the child for misbehavior in the school and the home, the discipline used was not in the best interest of the child. We note that DSS has had difficulty in placing the child, but that difficulty is not a basis for returning a neglected juvenile to parents who will not provide proper care and supervision. It is incumbent, however, on DSS to provide care and treatment for the juvenile consistent with the juvenile's best interests. Whether DSS breached its duty is not an issue here presented. In view of the evidence of neglect by the juvenile's parents, we find that the trial court acted in the best interest of the child in removing the child from the home while allowing supervised visitation and ordering testing of the family.

For the reasons stated, the trial court's order is

Affirmed.

Judges GREENE and LEWIS concur.